UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

HOLLISTER INCORPORATED,
an Illinois corporation,

        Plaintiff,

vs.                                                                                          Case No.  3:15-cv-1082-J-32JRK

ADAM J. MITCHELL,

        Defendant.
_____/

## REPORT AND RECOMMENDATION[1]

### I.  Status

This cause is before the Court on Plaintiff's Motion for Entry of Default Judgment Against Defendant Adam J. Mitchell (Doc. No. 63; "Motion"), filed December 14, 2016, that seeks a default judgment against Mr. Mitchell. Motion at 1, 10. Mr. Mitchell has not appeared in the case. He was served with the Complaint (Doc. No. 1) on September 17, 2015, see Return of Service (Doc. No. 9), and a Clerk's Default (Doc. No. 24) was entered against him on October 28, 2015. In addition, he was personally served with the Motion on April 25, 2017, see Plaintiff's Certification of Service (Doc. No. 68), and given until May 18, 2017 to respond to the Motion, failing which the Court would treat the Motion as unopposed, see Order (Doc. No. 67), entered April 21, 2017. To date, Mr. Mitchell has not responded.

---

[1] "Within 14 days after being served with a copy of [a report and recommendation on a dispositive motion], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." Id. A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. See Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.

Plaintiff's Complaint (Doc. No. 1), filed September 3, 2015, asserts claims of fraud and civil theft against Defendants InHome Medical Solutions, LLC, Todd M. LaVelle, Michael D. Elkin, and Mr. Mitchell. On April 3, 2017, Plaintiff filed a Notice of Voluntary Dismissal with Prejudice (Doc. No. 64) with respect to Defendants InHome Medical Solutions, LLC, Todd M. LaVelle, and Michael D. Elkin, pursuant to the parties' settlement agreement. Subsequently, the case was dismissed with prejudice as to these Defendants on April 18, 2017. See Order (Doc. No. 66).

All that remains in the case, therefore, are Plaintiff's claims against Mr. Mitchell. In the Motion, Plaintiff seeks a default judgment against Mr. Mitchell "in the amount of $1,208,614 trebled pursuant to Florida Statute § 772.11 (for a total judgment of $3,625,842)."[2] Motion at 10. Upon review of the Motion and the file as a whole, the undersigned finds the Motion is due to be granted for the reasons stated below.

## II. Background

According to the Complaint, Plaintiff Hollister Incorporated ("Plaintiff" or "Hollister") "develops, manufactures and markets health care products including ostomy, continence, wound care and skin care products," and Defendant InHome Medical Solutions, LLC ("InHome") was a distributor of Hollister's products. Complaint at 1-2 ¶¶ 1-3. The other Defendants are (or were) executive officers of InHome. Id. at 2-3 ¶¶ 4-6. Mr. Mitchell was InHome's chief operating officer from September 2011 to March 2015. Id. at 3 ¶ 6.

---

[2] As the Motion does not address whether it may be appropriate for any settlement amount to offset the default judgment sought against Mr. Mitchell, the undersigned entered an Order (Doc. No. 69) on May 31, 2017, directing Plaintiff to file a supplemental memorandum addressing the matter. See Order at 2. On June 14, 2017, Plaintiff filed its Supplemental Memorandum Regarding Default Judgment Against Adam J. Mitchell (Doc. No. 70; "Supplemental Memorandum"). According to the Supplemental Memorandum, Plaintiff's position is that because Mr. Mitchell has not asserted a claim for set-off, a set-off "is inappropriate at this time." Supplemental Memorandum at 2. But in Plaintiff's view, Mr. Mitchell "could assert set-off in response to any efforts by [Plaintiff] to collect its judgment." Id. Plaintiff indicates that the settlement agreement is confidential. Id. at 2 n.2.

Overall, Plaintiff claims Defendants committed fraud and civil theft by "systematically submitting false reports to Hollister in order to obtain rebates to which InHome was not entitled." Id. at 1 ¶ 1.  In the Complaint and the Motion, Plaintiff details the circumstances of Defendants' fraud scheme, cover-up, and exposure. See id. at 3-14 ¶¶ 9-53; see also Motion at 3-7.  The scheme developed from a vendor agreement between Hollister and InHome that entitled InHome to rebates for sales of Hollister products to certain customers, including Nurse on Call, Inc.  Complaint at 4-7 ¶¶ 13-26.  Plaintiff asserts that between November 2010 and February 2015, Defendants, including Mr. Mitchell, falsely reported that InHome's sales to regular customer were instead sales to Nurse on Call, Inc.  Id. at 6-7 ¶¶ 26-19; see also Motion at 4-5.  They did so, according to Plaintiff, to receive the rebates from Hollister pursuant to the companies' vendor agreement.  See Complaint at 6 ¶ 19.  Plaintiff alleges these falsely obtained rebates ultimately totaled more than $1.2 million. Motion at 9; see also Motion Ex. C (Declaration of Lung Hao Michael Ngan; "Declaration"), at 3-4.

As set out in the Complaint, Plaintiff began auditing InHome's sales in 2014, particularly questioning Defendants about the reported sales to Nurse on Call, Inc.  Complaint at 8-10 ¶¶ 28-38.  Defendants, including Mr. Mitchell, insisted the reports were accurate, and they fabricated documentation to support this.  See id.  In March 2015, Plaintiff contacted Nurse on Call, Inc.'s chief financial officer, Jamie Hynes, about the matter, and Plaintiff was provided with invoices and other documents showing far fewer purchases than reflected in InHome's reports.  Id. at 10-11 ¶¶ 39-44.

It appears from the Complaint that Plaintiff's communication with Mr. Hynes essentially led Mr. Mitchell to admit his involvement in the scheme.  On March 10, 2015, Mr. Mitchell contacted Mr. Hynes by text message to find out what information Mr. Hynes had provided to

Plaintiff. Id. at 12 ¶ 46.  Mr. Mitchell wrote to Mr. Hynes, among other things, "If you sent them data from your system I'm not concerned <u>if it's my invoices them [sic] I'm toast</u>."  Id. (alteration in original).  In the text message conversation, Mr. Mitchell revealed the scheme to Mr. Hynes, stating that Mr. Mitchell had "increased [Nurse on Call, Inc.'s] sales to access higher tier and used [Nurse on Call, Inc.'s] price contract to sell to some retail . . . ."  Id. at 13 ¶ 46.  On March 20, 2015, Mr. Mitchell called Hollister's chief auditor and admitted that InHome had falsified its reports to gain rebates.  <u>See</u> id. at 14 ¶ 49.  Mr. Mitchell later described in detail the scheme, and his role in it, during his deposition on October 20, 2016.  <u>See</u> Motion Ex. A, at 6-34 (deposition pages 21-132).

### III.  Legal Standard

Rule 55, Federal Rules of Civil Procedure ("Rule(s)"), provides the requirements for entry of a default judgment.  <u>See</u> Fed. R. Civ. P. 55(b)(2).  A default judgment may be entered "against a defendant who never appears or answers a complaint, for in such circumstances, the case never has been placed at issue."  <u>Solaroll Shade & Shutter Corp. v. Bio-Energy Sys.</u>, 803 F.2d 1130, 1134 (11th Cir. 1986).  All well-pleaded allegations of fact are deemed admitted upon entry of default; however, before entering a default judgment, a court must confirm that it has jurisdiction and that the complaint adequately states a claim for which relief may be granted.  <u>See</u> <u>Nishimatsu Const. Co. v. Houston Nat. Bank</u>, 515 F.2d 1200, 1206 (5th Cir. 1975);[3] <u>see also</u> <u>GMAC Commercial Mortg. Corp. v. Maitland Hotel Assocs.</u>, 218 F. Supp. 2d 1355, 1359 (M.D. Fla. 2002) (stating that "[a] default judgment cannot stand on a complaint that fails to state a claim") (citations omitted).

---

[3]  In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the United States Court of Appeals for the Eleventh Circuit adopted as binding precedent all the decisions of the former United States Court of Appeals for the Fifth Circuit handed down prior to the close of business on September 30, 1981.

## IV.  Discussion

In determining whether the Motion should be granted, the undersigned considers whether there is jurisdiction over the claims, whether Plaintiff has stated valid claims for relief, and whether Plaintiff has set forth sufficient evidence to establish its entitlement to the damage award sought.  As to jurisdiction, this case is properly within the subject matter jurisdiction of this Court due to the diversity of citizenship among the parties and an amount in controversy exceeding $75,000.  28 U.S.C. § 1332; see Complaint at 2-3 ¶¶ 2-7; id. at 14 ¶ 53.  The undersigned is also satisfied that the Court has personal jurisdiction over Mr. Mitchell based on the Complaint's allegation that he resides in Boca Raton, Florida.  Turning to the causes of action, Plaintiff seeks default judgment on its two Counts against Mr. Mitchell: common law fraud (Count I) and civil theft under section 772.11, Florida Statutes.  See Motion at 9; Complaint at 14-17 ¶¶ 54-68.  These are considered separately below, followed by a discussion of the damages sought.

As to Count I, Plaintiff has alleged sufficient facts, taken as true, to establish the elements of common law fraud with respect to Mr. Mitchell.  These elements are as follows:

> (1) a false statement of fact, (2) known by the person making the statement to be false at the time it was made, (3) made for the purpose of inducing another to act in reliance thereon, (4) action by the other person in reliance on the correctness of the statement, and (5) resulting damage to the other person.

Kelly v. Nelson, Mullins, Riley & Scarborough, L.L.P., No. 8:01-cv-1176-T-27MAP, 2002 WL 598427, at *7 (M.D. Fla. Mar. 20, 2002) (unpublished) (citing Gandy v. Trans World Comput. Tech. Grp., 787 So. 2d 116, 118 (Fla. 2d DCA 2001)).  Here, as summarized above, see supra Part II, Mr. Mitchell knowingly made false statements in InHome's sales reports to Plaintiff.  See Complaint at 6-10 ¶¶ 19-38.  He did this to obtain Plaintiff's rebate payments for InHome.  Id. at 6-7 ¶¶ 19-26.  Relying on these reports, Plaintiff paid the rebates and was

thereby damaged. Id. at 1 ¶ 1. Plaintiff's specific factual allegations of these actions satisfy the heightened pleading standard imposed by Rule 9(b), Federal Rules of Civil Procedure. See United States ex rel. Clausen v. Lab. Corp. of Am., 290 F.3d 1301, 1310 (11th Cir. 2002); J'Carpc, LLC v. Wilkins, No. 1:06-cv-02357-WSD, 2007 WL 4287765, at *5 (N.D. Ga. Dec. 5, 2007) (unpublished) (applying Rule 9(b) to a fraud claim in ruling on a motion for default judgment).

Plaintiff also states a valid claim against Mr. Mitchell on its Count II claim under Florida's civil theft statute, which provides that "[a]ny person who proves by clear and convincing evidence that he or she has been injured in any fashion by reason of any violation of ss. 812.012-812.037 or s. 825.103(1) has a cause of action for threefold the actual damages sustained." Fla. Stat. § 772.11(1). Plaintiff's allegations establish a violation of section 812.014, Florida Statutes, that governs theft. Section 812.014 provides as follows:

> (1) A person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently:
>
> (a) Deprive the other person of a right to the property or a benefit from the property.
>
> (b) Appropriate the property to his or her own use or to the use of any person not entitled to the use of the property.

Fla. Stat.§ 812.014(1).[4] To establish a claim under section 812.014, "the claimant must prove the statutory elements of theft, as well as criminal intent." Rhodes v. O. Turner & Co., LLC, 117 So. 3d 872, 875 (Fla. 4th DCA 2013) (citation omitted). In addition, for treble damages to be available under section 772.11(1), a potential plaintiff must first make a written demand for payment of treble damages upon a defendant. Fla. Stat. § 772.11(1).

---

[4] If the value of the stolen property is $100,000.00 or more, under the statute, "the offender commits grand theft in the second degree." Fla. Stat. § 812.014(2)(a)(1).

Here, it is clear from the Complaint that Mr. Mitchell committed theft against Plaintiff, in that he knowingly obtained Plaintiff's funds (through rebate payments) to which Plaintiff had a right, and he appropriated these funds for the use of InHome, which was not entitled to use them. See Complaint at 3-14 ¶¶ 9-53. The requisite criminal intent is evident in the Complaint.[5] See, e.g., id. at 7 ¶ 23; id. at 8-9 ¶¶ 31-34; id. at 12-13 ¶ 46. Plaintiff also satisfied all conditions precedent.[6] Id. at 16 ¶ 64.

Because the essential evidence relating to damages is before the Court, the undersigned finds a hearing on damages is unnecessary. SEC v. Smyth, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005). Plaintiff seeks damages "in the amount of $1,208,614 trebled pursuant to Florida Statute § 772.11 (for a total judgment of $3,625,842)." Motion at 10. As support, Plaintiff submits a Declaration of Hollister's senior operational auditor, Lung Hao Michael Ngan, in which Mr. Ngan explains how the damages were calculated. See Motion Ex. C, at 3-4. Mr. Ngan states that Plaintiff obtained records from InHome customers and compared those records with reports that InHome had submitted to Plaintiff. Id. at 3. Based on this comparison, Mr. Ngan found that "the vast majority" of sales InHome reported as rebate-eligible sales were not actually rebate-eligible sales. Id. Mr. Ngan determined the percentage of these non-eligible sales (95.5687683371905%), and he used the percentage to calculate the value of the rebates fraudulently obtained by InHome. Id. at 3-4. His

---

[5] Moreover, as noted, although not considered to determine whether Plaintiff states a valid claim, Mr. Mitchell admitted the scheme and described it in detail during his deposition on October 20, 2016. See Motion Ex. A, at 6-34 (deposition pages 21-132).

[6] "In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed." Fed. R. Civ. P. 9(c). As noted, one condition precedent to asserting a Florida civil theft claim is that the potential plaintiff must make a written demand for payment of treble damages upon a defendant. Fla. Stat. § 772.11(1). While it has not been considered as a basis for concluding that Plaintiff states a valid claim, Plaintiff's civil demand letter to Mr. Mitchell, dated October 30, 2015, is attached to the Motion. See Motion Ex. B.

calculations are presented in an exhibit to the Declaration. See Declaration Ex. 3 (Doc. No. 63-3, at 21).

Based on the Motion and Declaration, Plaintiff has sufficiently established damages in the amount of $1,208,614, which are to be trebled pursuant to section 772.11, Florida Statutes, for a total judgment of $3,625,842. The undersigned further observes that, having been served with the Complaint and the Motion, Mr. Mitchell has received adequate notice of the claims against him and the damages sought.[7] Despite having ample opportunity to respond and address these matters, Mr. Mitchell has not filed anything in the case. He has made no claim or request for an offset or reduced damages of any kind. Moreover, Plaintiff's Motion does not seek to recover any of Plaintiff's attorneys' fees or costs from Mr. Mitchell.

Accordingly, as Plaintiff has established its claims against Mr. Mitchell and its entitlement to the damages sought, the undersigned finds it appropriate to enter a default judgment for the full amount of damages. See, e.g., State Farm Mut. Auto. Ins. Co. v. Grafman, 968 F. Supp. 2d 480, 483 (E.D.N.Y. 2013) (stating that "[i]n choosing not to participate in the litigation, a defaulting party eschews the opportunity to carry [his] burden [to show the extent to which a recovery against him may be duplicative of the recovery from settling defendants], and therefore does not demonstrate [his] entitlement to, or deserve the benefit of, a set-off" (citations omitted)).

## V. Conclusion

Based on the foregoing, it is

---

[7] Indeed, in his deposition on October 20, 2016, Mr. Mitchell acknowledged that a default was entered against him in this case. See Motion Ex. A, at 34 (deposition page 133). When asked if he understood what that meant, Mr. Mitchell replied, "Basically I admit guilt and I—you know, knew about this." Id. He was also asked if he and Plaintiff had "reached an agreement with respect to Hollister not seeking to enforce a judgment against [him] for $3.6 million," and he replied, "No, there's been no agreement in place that I know of." Id. at 35 (deposition page 134).

**RECOMMENDED**:

1. That Plaintiff's Motion for Entry of Default Judgment Against Defendant Adam J. Mitchell (Doc. No. 63) be **GRANTED**.

2. That the Clerk of Court be directed to enter judgment in favor of Plaintiff and against Mr. Mitchell in the amount of $3,625,842 ($1,208,614, trebled pursuant to section 772.11, Florida Statutes).

3. That the Clerk of Court be further directed to close the file.

**RESPECTFULLY RECOMMENDED** at Jacksonville, Florida on June 29, 2017.

*[signature]*
JAMES R. KLINDT
United States Magistrate Judge

clr
Copies to:

The Honorable Timothy J. Corrigan
United States District Judge

Counsel of Record

Adam Mitchell
10690 Emperor Street
Boca Raton, FL 33428